UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRYV, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1269,<br><br>　　　　Defendant. | Case No. 21-cv-04280-JCS<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 30, 31 |

## I.  INTRODUCTION

After finding violations of a collective bargaining agreement, an arbitrator determined that Plaintiff Thryv, Inc.[1] must make whole five employees who were fired pursuant to a performance improvement plan ("PIP"). Thryv brought this action to vacate the arbitration award on the grounds that the arbitrator lacked authority and his ruling conflicted with a determination of the National Labor Relations Board ("NLRB"). Defendant International Brotherhood of Electrical Workers, Local 1269 (the "Union") filed a counterclaim to confirm and enforce the award. The parties now each move for summary judgment, and the Court held a hearing on February 25, 2022. For the reasons discussed below, Thryv's motion is DENIED, and the Union's motion is GRANTED except as to attorneys' fees.[2]

---

[1] Thryv is the successor to previous employer entities involved in this dispute, including YP Western Directory, LLC and Dex Media Inc. d/b/a DexYP. For simplicity, this order refers to all such entities as "Thryv."
[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Negotiations, Terminations, and Arbitrations

During 2018, the stated term of the parties' collective bargaining agreement ("CBA") had expired, but they had orally agreed to extend it pending negotiations. *See* Joint Appendix ("JA," dkt. 31-2) at 216 (letter from the NLRB noting the oral extension). As an addendum to the then-effective CBA, the parties had entered a letter agreement in 2014 regarding Thryv's ability to implement a PIP:

> The company reserves the right to implement and/or amend performance standards consistent with this letter of agreement. At the company's request, the parties agree to meet and bargain over new or to amended performance standards.
>
> If the parties fail to agree on new or amended performance standards within 30 days of the date of the company's request, the company may implement its proposed performance standard(s).
>
> The Union will have the right, within 14 days of the company notifying the Union that it is implementing performance standards, to request that the performance standards be reviewed by an independent third party arbitrator. The issue to be determined by the arbitrator will be the fairness and reasonableness of the company's proposed performance standards. If the arbitrator upholds the union's claim that any performance standard proposed by the company is not fair and reasonable, the parties agree to meet and develop, within 30 days of the arbitrator's determination, a mutually agreeable performance standard to replace any performance standard determined by the arbitrator to be unfair and unreasonable. If no agreement is reached during this time frame, the Union may again request that the company's newly proposed performance standards be reviewed by the arbitrator.

*Id.* at 213.

Thryv had sought to implement a PIP in 2016, but the Union filed a grievance and an arbitrator rejected portions of that PIP in July of 2017. *See id.* at 3–4. After what Thryv considered to have been several months of unsuccessful negotiations, Thryv implemented another proposed PIP in June of 2018. *See id.* at 7.

The Union filed a charge with the NLRB asserting that Thryv's implementation of the PIP violated the National Labor Relations Act ("NLRA"). The NLRB determined that "the charge appear[ed] to be covered by provisions of the collective-bargaining agreement," and by letter dated August 7, 2018, deferred processing the charge pending arbitration of a grievance under the

2

CBA. *Id.* at 216–19.

The Union raised that issue to arbitrator David Weinberg in the first of two arbitrations relevant to this case.[3] The parties stipulated that the arbitrator should decide the following questions:

> Did the Employer violate the CBA (specifically the Letter of Agreement dated February 7, 2014) and/or Section 8(a)(5) of the National Labor Relations Act when it implemented the PIP performance plan for premise sales representatives on June 13, 2018? If so, what is the appropriate remedy?

*Id.* at 2. They also stipulated that "the matter is properly before the Arbitrator for resolution and that jurisdiction may be retained to resolve any disputes over the meaning or application of the Decision and Award." *Id.* (emphasis omitted). The arbitrator held hearings on November 30, 2018 and January 14, 2019, and took post-hearing briefing on March 10, 2019. *Id.*

Meanwhile, on September 25, 2018, Thyrv informed the Union that it was "cancel[ing] the agreement to extend the predecessor CBA effective immediately," and implementing its last best final offer ("LBFO").[4] *Id.* at 586. The LBFO struck the previous letter agreement regarding notice, negotiation, and arbitration of any PIP that Thryv might implement, and included a memorandum providing instead that:

> The Company may change the PIP policy, which outside this agreement shall be the plan provided to the Union on August 15, 2017 and confirmed for implementation by letter dated May 23, 2018, as it relates to performance by premise business advisors after providing the IBEW with notice and a reasonable opportunity to meet and negotiate over the change for thirty days prior to implementation.

*Id.* at 674. The parties agreed at the hearing on the present motions that the terminated employees were "premise business advisors" for the purpose of that memorandum.

Thryv sent a second letter to the Union the same day "to provide [the Union] with specific

---

[3] The 2017 decision by another arbitrator rejecting Thryv's 2016 PIP is noted above for background, but is not at issue in this case.

[4] "When collective bargaining is undertaken in good faith, but labor and management reach an impasse as to terms covering wages, working conditions, and other mandatory terms of bargaining, the employer is allowed to impose its last, best offer without committing an unfair labor practice or violating the law." *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1193 n.12 (9th Cir. 2017).

3

information about [Thryv's] implementation plans." *Id.* at 588. That letter included the following short section addressing the PIP:

> PERFORMANCE IMPROVEMENT PLAN
> • The Performance Improvement Plan that was implemented in June 2018 is in place.

*Id.* at 589. After Thryv implemented the LBFO, "any disciplinary process effectively started over under the performance improvement plan," such that "sales representatives were able to start over with a clean slate." *Id.* at 543.

"The Union challenged the Employer's implementation of the LBFO through an unfair labor practice charge, which alleged violation of NLRA Section 8(a)(5)," and "NLRB Region 20 rejected the Union's ULP Charge." *Id.* at 521 (arbitrator's decision summarizing stipulated facts). "The Union appealed the Region's rejection of the Charge to the NLRB's Office of Appeals, which rejected the Union's appeal." *Id.*

During the period from January 25, 2019 through March 22, 2019—after Thryv canceled the CBA and implemented its LBFO, and while the first arbitration regarding its June 2018 implementation of the PIP was pending—Thryv terminated the five employees at issue in this case based on the terms of the PIP. *Id.* at 521. There does not appear to be any dispute that those terminations were based on purported deficiencies by those employees occurring entirely after the implementation of the LBFO, consistent with Thryv's representations that employees started over with a "clean slate" upon that implementation. *See id.* at 543.

On May 23, 2019, in a section that he later highlighted as the "most relevant parts" of this initial decision, *id.* at 523, the arbitrator found as follows:

> I have concluded that the Union met their burden of showing that there were two substantive changes to the Employer's implemented 2018 Plan [as compared to the proposal Thryv presented to the Union for negotiation], which the Union was not given the opportunity to bargain over in accordance with the procedures outlined in the 2014 LOA. The proper remedy for this failure is to rescind the PIP as implemented and to order the parties to bargain over whichever Plan the Employer wishes to implement in accordance with the LOA. Any employee who may have been adversely affected by the implementation should be made whole.

*Id.* at 16. The arbitrator ordered such relief in his award. *Id.* at 17. It is not clear whether any

party informed the arbitrator before he issued this award that the CBA had been terminated and that Thryv had imposed its LBFO.

Thryv declined to reinstate the employees terminated in January through March of 2019. The Union initiated a second arbitration, and the parties stipulated that the issue to be decided was whether "the Employer failed to comply with the Arbitrator's Award of May 23, 2019, and if so, what is the remedy." *Id.* at 520.

Thryv argued to the arbitrator that the PIP in place after it terminated the CBA and implemented its LBFO is September of 2018 was a separate plan from the June 2018 PIP, properly imposed without any contractual requirement to negotiate because the LBFO removed the agreement to do so, and that the arbitrator therefore lacked authority to issue an award based on the that agreement. *See id.* at 522–23. Thryv also argued that it complied with the arbitrator's first award requiring it to negotiate before imposing a new PIP, because it had attempted to negotiate issues related to the PIP in the course of attempting to negotiate a new CBA. *See id.* at 522–23.

The arbitrator rejected those contentions, holding as follows on March 4, 2021:

> As stipulated by the parties, five employees were terminated between January 25, 2019 and March 22, 2019, two months before I rendered my decision. The Employer argues that the terminated individuals, were not terminated under the June 2018 Plan, but under a September 2018 LBFO Plan. This of course, occurred before I rendered my Award.
>
> The Employer further argues that they complied with my decision by bargaining with the Union over the 2018 implemented PIP between June and September of 2018, which was before I ever concluded the Employer violated the Agreement and must rescind the PIP.
>
> I cannot conclude that the Employer complied with my decision, before I rendered it, and cannot conclude that they complied with my order of remedy to rescind the Plan, and began new bargaining over a new Plan.
>
> The final result of that bargaining was solely up to the parties and not up to the Arbitrator to determine, but the process had to begin with the rescission of the Plan and the restoration of the *status quo ante*. Ms. Dickson's letter to the Union of September 25, 2018 stated that the implemented Plan of June 2018 was in place. The intent of my Award was to remedy the Employer's failure to fairly bargain the implemented 2018 PIP, and to begin the bargaining process again, while making whole any affected employees.

5

> The Employer has failed to comply with my Award by not reinstating the five employees who were fired for performance reasons, as a result of the performance plan. They should be made whole for all lost wages and benefits. Interest should be assessed beginning the date of this Award.

*Id.* at 524–25 (paragraph breaks added). In this action, Thryv challenges that decision, and the Union seeks to confirm and enforce it.

### B. The Parties' Arguments

Thryv acknowledges in its motion for summary judgment that courts afford extreme deference to determinations by labor arbitrators, but argues that the arbitrator here substituted his own judgment for the terms of the parties' agreement, and that his award violated public policy because it conflicted with the NLRB's dismissal of the Union's challenge to the LBFO. Thryv Mot. (dkt. 31) at 2. According to Thryv, its LBFO effectively rescinded the PIP that had been imposed in June of 2018 (the validity of which was before the arbitrator) and replaced it with a new but substantively identical PIP. *Id.* at 3–5. Thryv contends that its unilateral rescission of the June 2018 PIP when it implemented its LBFO in September of 2018 rendered the arbitrator's May 2019 remedy requiring it to do so moot. *Id.* at 8. In Thryv's view, the arbitrator's limited mandate to interpret the CBA and determine a remedy if he found that it was violated did not extend to terminations that occurred under the auspices of the LBFO rather than the CBA, and the LBFO could not in itself create any right to arbitration. *Id.* at 9–11.[5] Thryv also asserts that "the Arbitrator did not deign to respond to [Thryv's] argument that the 2019 discharges were outside his ruling under the 2014 contract," and instead, "[a]pparently disappointed that the cancellation of the 2014 contract and the implementation of the LBFO had left him with nothing to order [Thryv] to do, he ordered the implausible and the punitive." *Id.* at 12. Thryv concludes by arguing that the arbitrator's award conflicts with the NLRB's dismissal of the Union's challenge to the LBFO, because the NLRB determined that Thryv bargained in good faith to an impasse before

---

[5] The parties dispute whether Thryv raised a challenge to the arbitrator's authority during arbitration. *See* Thryv Mot. at 8; Union Opp'n (dkt. 34) at 2–3, 5–6; Thryv Opp'n (dkt. 35) at 5–7; Thryv Reply (dkt. 37) at 2; Union Reply (dkt. 36) at 3–4. Because the Court concludes that the arbitrator had authority to issue and enforce his awards, the Court declines to resolve the Union's contention that Thryv waived that argument.

legitimately implementing the LBFO. *Id.* at 12–14.

In the Union's view, the arbitrator found as a matter of fact that Thryv never rescinded its wrongfully implemented June 2018 PIP when Thryv implemented its LBFO later that year, rejecting Thryv's argument that it had established a new PIP as part of the LBFO. Union Mot. (dkt. 30) at 8. The Union notes that Thryv told the Union when it implemented the LBFO that the June 2018 PIP remained "in place." Union Opp'n (dkt. 34) at 3. The Union contends that there is no contradiction between the NLRB's decision—which did not address the PIP—and the arbitrator's award. Union Mot. at 8; Union Opp'n at 3, 6–9. The Union further argues that arbitrators may generally award remedies extending beyond the expiration of a CBAs, and that the parties here also vested the arbitrator with authority to determine whether Thryv violated the NLRA, "an issue not tethered to the term of the CBA." Union Mot. at 8–9; Union Opp'n at 4–5.

Thryv contends that although remedies can in appropriate cases extend beyond the life of a CBA, the LBFO's removal of the negotiation requirement on which the arbitrator based his decision effectively cut off any authority for him to impose remedies for harm suffered after its implementation. Thryv Opp'n (dkt. 35) at 3–4. Thryv argues that although the arbitrator was authorized to decide whether Thryv violated the NLRA, his award—which states that Thryv violated the CBA "and/or" the NLRA and does not otherwise discuss the NLRA—does not include any clear determination that Thryv violated that statute, and thus cannot be sustained on that basis. *Id.* at 7–8. Thryv also contends that the arbitrator made no specific finding that Thryv never rescinded its June 2018 PIP, and instead characterizes the arbitrator's second award as based on his view that any conduct occurring before the date of the first award inherently could not have satisfied the requirements of that award. Thryv Reply (dkt. 37) at 3. Thryv argues that its letter to the Union, stating that after implementation of the LBFO, the June 2018 PIP was "in place," merely "describ[ed] the rules of PIP 2 under the LBFO." *Id.* Thryv concludes that the arbitrator's remedy was irrational and punitive, and thus must be set aside. *Id.* at 3–4.

The Union's reply reiterates several of its earlier arguments, and contends that any ambiguity as to whether the arbitrator found a violation of the NLRA should be resolved in favor of enforcing the award, but at worst, the Court should remand to the arbitrator for clarification

7

rather than setting aside the award.  *See generally* Union Reply (dkt. 36).

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id.* (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court "'to scour the record in search of a genuine issue of triable fact.'" *Id.* (citation omitted); *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable to presentation in an admissible form.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).  Neither conclusory, speculative testimony in affidavits nor arguments in moving papers are sufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the

1  record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate.

2  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

3      The parties here have not suggested that there are any potential factual disputes that could

4  not be resolved on summary judgment and would require adjudication at trial.

        **B.**    **Legal Standard for Challenges to Labor Arbitration Awards**

    When reviewing labor arbitration awards, courts "afford a 'nearly unparalleled degree of deference' to the arbitrator's decision." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 529, 530 (9th Cir. 2016) (quoting *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1204–05 (9th Cir. 1989) (en banc)). This high degree of deference is due to "the centrality of the arbitration process to stable collective bargaining relationships," *id.*, as well as the notion that "[s]ince the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot 'misinterpret' a collective bargaining agreement." *Stead Motors*, 886 F.2d at 1205. Courts are generally prohibited from looking to the merits of the arbitration decision, and "a court should not reject an award on the ground that the arbitrator misread the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

    While highly deferential to labor arbitration awards, courts may vacate these awards when the arbitrator did not properly "look at and construe the contract." *See Drywall Dynamics*, 823 F.3d at 530. The Ninth Circuit has identified the following four circumstances that warrant vacating a labor arbitration award:

> (1) when the award does not draw its essence from the collective bargaining and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Id.* (citing *S. Cal. Gas Co. v. Util. Workers Union of Am.*, 265 F.3d 787, 792–93 (9th Cir. 2001)).

    "The scope of the arbitrator's authority is limited to the issue submitted to him by the parties." *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1294 (9th Cir. 1987) (citing *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982)). In analyzing whether an arbitrator exceeded this authority, the arbitrator's opinion must be upheld if

the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38. Courts "treat the arbitrator's interpretation of the scope of the issues submitted to him with great deference." *Federated Dep't Stores v. United Foods & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1498 (9th Cir. 1990). However, "an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority." *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001).

An arbitration award "draws its essence" from a bargaining agreement "when it is based on language in the CBA." *SFIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Loc. Lodge 311*, 103 F.3d 923, 924 (9th Cir. 1996) (citing *Stead Motors*, 886 F.2d at 1205 n.6). An arbitration award fails to "draw its essence" from a bargaining agreement when "the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *Enter. Wheel*, 363 U.S. at 597). This exception is narrow and courts generally reserve findings that an award failed to draw its essence from bargaining agreement for "those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he manifestly disregarded the contours of the bargain expressed in outline by the collective bargaining agreement." *Stead Motors*, 886 F.2d at 1205 n.6 (internal citations omitted). An arbitrator generally "is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not express in it.'" *SFIC Props.*, 103 F.3d at 925 (quoting *Federated Dep't Stores*, 901 F.2d at 1497).

### C. The Arbitrator's Award Must Be Upheld

Thryv implemented a PIP unilaterally in June of 2018, while the CBA was in effect. According to the arbitrator, Thryv violated the CBA by doing so without complying with the CBA's negotiation requirement. While Thryv does not agree with that determination, it respects that it is bound by it. Thryv Mot. at 7.

A core principal at the heart of Thryv's arguments is that there are two separate PIPs at

10

issue: "PIP 1," which Thryv sought to implement in June of 2018 and the arbitrator determined was invalid, and "PIP 2," which Thryv implemented as part of its LBFO in September of 2018. *See id.* at 3–5. Assuming for the sake of argument that might be one reasonable interpretation of Thryv's LBFO, it is not the only reasonable interpretation.

Nothing in the LBFO explicitly purports to set forth a new PIP. Instead, the LBFO's memorandum addressing PIPs merely referenced "the PIP policy, which outside this agreement shall be the plan provided to the Union on August 15, 2017 and confirmed for implementation by letter dated May 23, 2018," in the context of a paragraph primarily addressing a negotiation requirement before Thryv would make any changes to the PIP for premise business advisors. JA at 674. In addition to the paragraph's apparent focus on the future modification process rather than imposing a new PIP, the phrase "outside this agreement" is ambiguous, and could be interpreted as specifically disclaiming any intent that the LBFO would itself impose a PIP. Thryv's contemporaneous letter to the Union stating that the PIP "that was implemented in June 2018 is in place," *id.* at 589, also tends to suggest that Thryv believed that its existing PIP remained effective, rather than intending to establish a new PIP. Thryv's decision to reset all employee discipline under the PIP upon implementation of the LBFO, *see id.* at 543, lends some support to its view that the LBFO established a new PIP, but as only one datapoint in an otherwise murky record, that alone does not preclude a finding that when Thryv implemented the LBFO, it was relying on its June 2018 PIP remaining in effect (and surviving the then-pending arbitration) rather than imposing a new PIP.

Thryv asks the Court, as a hypothetical, to "[a]ssume that the parties had reached an agreement in September 2018 that included a [different] performance plan." Thryv Opp'n at 5. That would be a very different case. Thryv's LBFO likely *could* have established a new PIP without specifically negotiating that plan with the Union through the framework of the 2014 agreement (besides the negotiations necessary for Thryv's LBFO itself to take effect). The LBFO also could have eliminated the requirement to negotiate before changing the PIP, and Thryv could thereafter have changed the PIP unilaterally. But—at least as the arbitrator saw it—that is not what happened.

11

Instead, Thryv left the June 2018 PIP in place. It did not offer (and ultimately impose) a new PIP as part of the LBFO, nor did it alter the PIP after implementing the LBFO in a manner consistent with the terms of the LBFO. That conclusion is implicit in the arbitrator's March 4, 2021 determination that he "cannot conclude that [Thryv] complied with [his] order of remedy to rescind the Plan, and began new bargaining over a new Plan," a process that "had to begin with the rescission of the Plan and the restoration of the *status quo ante*." *Id.* at 524. The arbitrator's acknowledgment that Thryv's "letter to the Union of September 25, 2018 stated that the *implemented* Plan of June 2018 was in place," in conjunction with his statement that the employees at issue were fired "as a result of *the* performance plan," reflect his understanding that there was only one PIP that remained in place both before and after the LBFO. *Id.* at 524–25 (emphasis added). In short, the arbitrator's decision rests on his rejection of Thryv's position that there was ever any "PIP 2."

Thryv has argued to the contrary, and contended at the hearing that it sufficiently negotiated the PIP as part of the LBFO such that the LBFO served to ratify and validly implement it. But even if the Court were persuaded that Thryv were correct as to what actually occurred, "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco*, 484 U.S at 36. The arbitrator's award is best understood as rejecting Thryv's position, which Thryv had pursued before the arbitrator,[6] and is entitled to extreme deference.

The two questions before the arbitrator in the first arbitration were: (1) whether Thryv violated the CBA "and/or Section 8(a)(5) of the National Labor Relations Act" by implementing the PIP on June 13, 2018; and (2) if so, what remedy was appropriate. *Id.* at 2. In an award rendered after Thryv had implemented its LBFO, the arbitrator determined not only that Thryv violated the CBA and that it must make whole any individual employees harmed by the PIP, but

---

[6] For example, at the start of a hearing before the arbitrator, the Union's attorney suggested that one of the Union's witnesses' testimony might not be necessary because the parties might be able to stipulate that the same PIP remained in effect from June 2018 through the employees' terminations. Thryv's counsel responded that there was in fact a dispute as to that issue, as Thryv "believe[d] that the plan was effectively rescinded." JA at 528.

also that it must rescind the PIP and engage in negotiations "in accordance with the procedures outlined in the 2014 LOA" before imposing a new one. *Id.* at 16.

Thryv did not challenge that determination at the time, and it has not clearly challenged it here. *See* Compl. (dkt. 1) ¶¶ 13–14 (seeking to vacate "Award 2," without reference to vacating the first award). Nor did it apparently ever argue in that first arbitration that its termination of the CBA and implementation of the LBFO rendered any question of the June 2018 PIP's validity moot. It is not clear that either party even informed the arbitrator in that first proceeding that the LBFO had been implemented.

Regardless, the arbitrator's first decision, that the PIP must be revoked and subject to negotiation before implementation, is rationally related to the violation, and it would be entitled to deference even if challenged. Thryv's employees worked under the framework of the wrongfully imposed PIP for a period of months. Even for employees who suffered no formal adverse consequences under the policy for which they could later be individually made whole, the PIP presumably had an effect on their approach to their jobs—as it was intended to—and applied a different sort of pressure than the previous policy that it replaced. Under the terms of their then-effective CBA, however, they should have been entitled to a grace period of at least thirty days from the time such a policy was proposed to the time it was imposed (if the Union did not consent to it), and the Union should have been given an opportunity to present its views on the specific proposal at issue and seek a compromise. The arbitrator's remedy, to require rescission and negotiations in the manner that would have been required by the 2014 CBA, bears a legitimate relationship to the violation in that it granted the Union the procedural opportunity—and the employees the respite from working under the PIP—that would have been provided if Thryv had abided by the CBA at the time it implemented the policy.[7] That is true regardless of the framework for changes to a PIP under the subsequently implemented LBFO, because the remedy

---

[7] The outcome might differ if the arbitrator imposed substantive limits on a future PIP, inconsistent with the terms of the parties' post-CBA relationship under the LBFO. Here, though, the arbitrator merely required Thryv to engage in a period of negotiations as to whatever specific proposal it wished to pursue, without limitation on Thryv imposing such a plan after providing the Union an opportunity to negotiate.

restores the negotiation period that the Union was owed and denied under the CBA. It is particularly true where the LBFO *also* provided a thirty day period of negotiations for any changes to these employees' PIP, and allowing Thryv to proceed with its PIP without ever engaging in those negotiations would frustrate protections that were in place not only at the time it was originally imposed, but also at the time the employees were fired.[8]

Having concluded that the arbitrator had authority to order Thryv to rescind the PIP and engage in negotiations before implementing a new one, even after the LBFO replaced the CBA that Thryv violated, it is a small step to uphold the arbitrator's second decision that employees harmed by the PIP after implementation of the LBFO are entitled to recourse. Courts, including the Ninth Circuit and the Supreme Court, have endorsed arbitrators' awards granting relief for harm suffered after the CBA lapsed where such harm ran from a violation that occurred during the term of the CBA:

> [W]e find no merit in [the] contention that a remedy which extends beyond the expiration date of a collective bargaining agreement is per se inappropriate. Indeed, in *Enterprise Wheel*, the Supreme Court reversed a court of appeals decision that vacated an arbitral award because the award extended beyond the expiration of the collective bargaining agreement. 363 U.S. at 599; see also *ILWU Local 142 v. Land & Constr. Co.*, 498 F.2d 201, 204 (9th Cir. 1974) (holding that an arbitral award of back pay that continued beyond the expiration of the collective bargaining agreement was perfectly appropriate because the agreement contained no provision restricting back pay to the term of the agreement). Indeed, the Supreme Court has emphasized the need for flexibility in formulating a remedy for breach of a collective bargaining agreement. *Enterprise Wheel*, 363 U.S. at 597. "The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *Id.*

*Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters*, 56 F.3d 1132, 1137 (9th Cir. 1995); *see also Prate Installations, Inc. v. Chicago Reg'l Council of Carpenters*, 607 F.3d 467, 471 (7th Cir. 2010) ("Remedies that extend beyond the termination of the CBA at issue are not necessarily impermissible.").

In *Prate Installations*, the Seventh Circuit nevertheless held that an arbitrator had exceeded

---

[8] Again, while Thryv contends that it engaged in sufficient negotiations regarding the PIP as part of its attempt to renegotiate the CBA before implementing its LBFO, the arbitrator apparently disagreed.

14

his authority in awarding damages and prospective equitable relief beyond the expiration of the CBA, because the parties had reached a subsequent CBA in which they "altered the arbitration procedures . . . to require that a standing panel of arbitrators, not including [the original arbitrator], resolve disputes." 607 F.3d at 472. The Seventh Circuit distinguished *Enterprise Wheel* on the basis that the circumstances before the Supreme Court in that case involved "no subsequent CBA that cut off the arbitrator's jurisdiction." *Id.* (citing 363 U.S. at 595, 597–98). Here, as in *Enterprise Wheel*, there was no subsequent CBA in place at the time of the employees' terminations, and thus no agreement by the parties to divest the arbitrator of authority.[9]

Much like the employees in *Enterprise Wheel* and *ILWU Local 142* were entitled to back pay and reinstatement beyond the expirations of their CBAs as remedy for harm that continued to flow from their wrongful termination during the terms of those CBAs, the arbitrator here rationally concluded that the Thryv employees at issue, though fired after the CBA expired, were terminated as a result of Thryv wrongfully imposing the PIP while the CBA was in place, and that they were entitled to remedies for their harm flowing from Thryv's June 2018 breach. The question before this Court is not whether it would have reached the same decision standing in the arbitrator's shoes, but instead whether "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38. Under that deferential standard, the Court cannot say that the arbitrator's award of remedies for the employees' termination after the CBA expired—but as a result of a policy wrongfully implemented during its term—fell clearly outside of the authority the parties granted him to determine an appropriate remedy if he found that the implementation of that policy breached the CBA.

Thryv also argues that the award should be set aside because it is inconsistent with the

---

[9] The text of Thryv's LBFO appears to have left the parties' agreement regarding arbitration materially unchanged. *See* JA at 56–57. Thryv argues that while an employer may impose working conditions based on an LBFO, an unaccepted LBFO cannot create a right to arbitration, which requires consent. Thryv Mot. at 11. Although none of the authorities Thryv cites are directly on point, the argument has some appeal. But the relevant question here is whether, like in *Prate Installations*, the parties agreed to *divest* the arbitrator of authority previously granted under the CBA and their stipulations, which they did not. The Court need not decide whether an arbitration provision from an expired CBA that is retained in materially identical form in an employer's LBFO remains effective for new disputes after the LBFO is implemented.

15

NLRB's dismissal of the Union's charge that Thryv's implementation of its LBFO violated the NLRA. The Union did not mention the PIP in its charge to the NLRB regarding the LBFO, JA at 706, and the NLRB did not address the PIP in its dismissal of that charge or in its letter denying the Union's appeal, *id.* at 708–15. If the LBFO had altered the PIP, or if it were construed as imposing a new PIP, the NLRB's decision to reject the Union's general argument that Thryv refused to bargain in good faith could *perhaps* imply that Thryv sufficiently negotiated whatever change to the PIP was included in the LBFO, thus preemptively satisfying the arbitrator's later award that Thryv must rescind the PIP and bargain as to a new one. The Court need not decide that question, however, because as discussed above, the arbitrator implicitly found that the LBFO did *not* impose a new PIP, and that it instead merely assumed the continuing validity of the June 2018 PIP at issue in arbitration. Under that interpretation, which is entitled to deference, there is no conflict between the arbitrator's decision that the continued use of the June 2018 PIP was invalid and the NLRB's rejection of the Union's challenge to the LBFO.

The Court therefore concludes Thryv has not established any basis to depart from the usual deference awarded to a labor arbitrator, and that the arbitrator's award must be confirmed based on his determination that Thryv implemented the PIP at issue in violation of the 2014 CBA. The Court does not reach either the Union's contention that Thryv waived any challenge the arbitrator's authority by not raising it in arbitration, or the parties' arguments as to whether the arbitrator also found a violation of the NLRA and whether the award can be confirmed on that basis.

### D.  Attorneys' Fees

Both parties briefly assert in their motions that the Court should award them attorneys' fees. *See* Thryv Mot. at 14; Union Mot. at 9–10. Neither party renews that request in its reply. The Union cites Ninth Circuit precedent holding "that an unjustified refusal to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for oppressive reasons" sufficient to support an award of fees. *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). Although the Court disagrees with Thryv's arguments on their merits for the reasons discussed above, they are not so "unjustified" as to

suggest that Thryv pursued this case "in bad faith, vexatiously or for oppressive reasons." *See id.* The Union's request to recover its attorneys' fees is therefore DENIED.[10]

## IV. CONCLUSION

For the reasons discussed above, the Union's motion for summary judgment is GRANTED except as to attorneys' fees, and Thryv's motion for summary judgment is DENIED. The arbitrator's March 4, 2021 award is CONFIRMED, and Thryv is ORDERED to comply with that award in all respects. The Clerk shall enter judgment in favor of the Union and close the case.

**IT IS SO ORDERED.**

Dated: February 28, 2022

JOSEPH C. SPERO
Chief Magistrate Judge

---

[10] Thryv's request for fees is, of course, also denied.